**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MAO-MSO RECOVERY II, LLC, a Delaware entity; MSP RECOVERY, LLC, a Florida entity; MSPA CLAIMS 1, LLC, a Florida entity, | Case No. |
| Plaintiffs, | CLASS ACTION COMPLAINT |
| vs. | DEMAND FOR JURY TRIAL |
| ALLSTATE INSURANCE COMPANY, an Illinois Corporation; ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, a Wisconsin Company, | |
| Defendants. | |

## **COMPLAINT**

Plaintiffs, MAO-MSO Recovery II, LLC, a Delaware entity; MSP Recovery, LLC, a Florida entity; and MSPA Claims 1, LLC, a Florida entity (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, bring this action against Allstate Insurance Company, its subsidiaries and its affiliates, and Esurance Property and Casualty Insurance Company, its subsidiaries and its affiliates (hereinafter collectively referred to as "Defendants"), and state as follows:

### **INTRODUCTION**

1.      Defendants failed to fulfill their statutorily-mandated duty under the Medicare Secondary Payer provisions of the Medicare Act to reimburse Medicare Advantage Organizations ("MAOs") for medical treatments or expenses paid by Plaintiffs and the putative Class Members ("Class Members") on behalf of Defendants' insureds.

2.      Plaintiffs assert the rights of MAOs via assignment of all rights, title, and interest allowing them to bring these claims.

3.      Plaintiffs and the putative class members provided Medicare benefits to

Medicare-eligible beneficiaries enrolled under the Medicare Advantage program. Each Medicare beneficiary suffered injuries related to an accident wherein Plaintiffs and the putative class members paid for the medical items or treatment. However, Defendants were ultimately responsible for paying those expenses in accordance with the MSP Law.[1] Defendants' responsibility for such payments was demonstrated when Defendants entered into settlements with the Medicare beneficiaries.

4.      This lawsuit seeks reimbursement for those medical expenses paid for by the Plaintiffs and the putative Class Members that should have been paid, in the first instance, by Defendants under the Medicare Act.

5.      As such, Plaintiffs filed this action on behalf of themselves and all other similarly situated MAOs for double damages, pursuant to the Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A).

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). At least one member of the class is a citizen of a different state than the Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

7.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for any non-federal claims alleged herein.

8.      This Court has personal jurisdiction over the Defendants insofar as the Defendants are authorized and licensed to conduct business in Illinois, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district.

---

[1] Each Defendant is a "primary plan" in accordance with the MSP Law. 42 U.S.C. § 1395y(b)(2)(A) (the term "primary plan" means "a group health plan or large group health plan, to the extent that clause (i) applies, and a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance, to the extent that clause (ii) applies.")

9.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

### I.     The Medicare Act

10.     In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

11.     The Medicare Act consists of five parts:  Part A, Part B, Part C, Part D, and Part E.  Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare.  *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w.  Under Parts A and B, Medicare provides hospital insurance and coverage for medically necessary outpatient and physician services.  42 U.S.C. § 1395w-21(a)(1)(A).  These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise.  The United States Centers of Medicare & Medicaid Services ("CMS") provides coverage under Parts A & B.  Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e*., MAOs, paid for by the United States, to provide Medicare benefits.  42 U.S.C. §§ 1395w–21–29.  Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

### II.     Medicare Secondary Payer Laws

12.     At the time of its inception, Medicare was the primary payer of medical costs.  When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient.  However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.

13.     Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage.  If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e*., it pays the medical

expense first—Medicare is always secondary.

14.     The MSP provisions implement this scheme by forbidding Medicare from paying medical expenses when "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii).  This prohibition applies to any "[p]ayment under" the Medicare Act.  42 U.S.C. § 1395y(b)(2)(A).  If a primary payer, "has not made or cannot reasonably be expected to make payment," Medicare makes a conditional payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  However, since Medicare is the secondary payer, the primary payer must reimburse Medicare for all conditional payments.  42 U.S.C. § 1395y(b)(2)(B)(ii).

15.     To enforce this scheme, the MSP provisions created "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) [.]" 42 U.S.C. § 1395y(b)(3)(A).

16.     Defendants are defined as "primary payers" and their policies are considered "primary plans" under the MSP provisions.   *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include a group health plan or large group health plan … a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance….); 42 C.F.R. § 411.21 (same).  Defendants entered into settlements with their insureds who were enrollees in a Medicare Advantage plan; such settlements triggered Defendants' obligations to make primary payment for the medical services required by their insureds.

## III.    Medicare Part C Program

17.     In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and

less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014). Part C gives Medicare beneficiaries the option of receiving Medicare benefits through private insurers (*i.e.*, MAOs).[2]

18.     MAOs enter into a contract with CMS to administer and provide the same benefits received under traditional Medicare. 42 U.S.C. §§ 1395w-21, 1395w-23. Pursuant to this contract, MAOs receive a fixed payment from CMS for each enrollee. MAOs do not issue a Medicare "insurance policy" but, rather, send out a document describing the Medicare benefits that enrollees receive. They do not pay benefits pursuant to a 'policy', but rather under a statutory framework. Thus, MAOs pay healthcare providers directly for the care received by Part C enrollees. If the costs of this care exceed the fixed payment received from the government, the MAO assumes the risk and cost. However, if that care costs less than the fixed payment, the MAO keeps the difference as profit. Thus, MAOs are incentivized to provide health insurance more efficiently and focus on positive health outcomes in a way that traditional fee-for-service Medicare models are not. *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare program to utilize innovations that have helped the private market contain costs and expand health care delivery options.").

19.     To become an MAO, a private insurer must enter a bidding process, meeting certain requirements set by CMS. Additionally, in providing the basic benefits offered to traditional Medicare enrollees, MAOs must abide by national coverage determinations provided by CMS and all coverage disputes between enrollees and MAOs must go through the traditional Medicare appeals process. CMS sets the fixed rate at which MAOs will be remunerated per enrollee and establishes services the MAO must provide.

20.     An enrollee's health coverage with an MAO is strictly construed and regulated by CMS. For instance, CMS creates templates that MAOs must utilize when creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail

---

[2] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

the health care benefits covered by the health plan. CMS requires that every evidence of

coverage contain the following language:

> [w]e have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

21.     The amount paid to the MAO is carefully calibrated, considering, such factors as

the geographic location, age, disability status, gender, institutional status, and health status of

*each* Medicare Advantage enrollee, to ensure actuarial equivalence with the traditional Medicare

fee-for-service program option.  *See* 42 U.S.C. § 1395w-23(c).

22.     Currently, there are over 16 million individuals enrolled in Medicare Advantage

plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug

plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

23.     The size and expense of the Medicare Advantage program makes it important that

insurance companies, like Defendants, do not deflect their financial obligations under the MSP

law onto MAOs and ultimately onto the Medicare Trust Funds.[3]

24.      Beneficiaries who receive their benefits through the traditional Medicare scheme

and those who elect to receive their benefits through an MAO plan are all considered Medicare

beneficiaries.  Moreover, the MSP provisions apply with equal force to MAOs.  Indeed, MAOs

are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or

individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

25.     The legislative history of the MSP provisions demonstrates that MAOs were

intended to occupy a status analogous to that of traditional Medicare:

> [u]nder original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and

---

[3]     Medicare is funded through two trust fund accounts held by the U.S. Treasury. https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/ReportsTrustFunds/Downloads/TR2016.pdf (last visited Feb. 19, 2017).

services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R.Rep. No. 105–217, at 638 (1997).

26.     Part C of the Medicare Act also contains the following important provisions:

Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—

(A) the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or

(B) such individual to the extent that the individual has been paid under such law, plan, or policy for such services.

42 U.S.C. § 1395w–22(a)(4).

27.     Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment may be made under [the Medicare statute] for any expenses incurred for items or services which … are not ***reasonable*** and ***necessary*** for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

28.     Because this Section contains an express condition of payment – that is, "no payment may be made" – it explicitly links each Medicare payment to the requirement that the particular item or service be "reasonable and necessary."

29.     Once an MAO makes a payment for medical items and services on behalf of its enrollees, the payment is conclusive proof that the items and services were reasonable and necessary.

30.     If a Medicare beneficiary or primary payer contests an MAO's right to reimbursement, the claim is construed as "arising under" the Medicare Act.  Therefore, the time limitations for contesting whether a claim is reasonable or necessary under the Medicare Act applies.

31.     In this case, Defendants failed to administratively appeal the MAOs' rights to

7

reimbursement within the administrative remedies period on a class-wide basis. Defendants, therefore, are time-barred from challenging the propriety of reimbursements or the amounts paid.

32.     Furthermore, the MSP provisions create a private cause of action against a primary plan when the primary payer fails to pay first or does not reimburse an MAO for its payment: "There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any limitations on which private parties may bring suit.

## IV.     Primary Payer Reporting Requirements

33.     In 2007, the Medicare Act was once again amended by the Medicare, Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the ability of CMS and MAOs to administer Medicare benefits.  Part of those changes specifically aimed to help CMS and MAOs identify when a Medicare beneficiary was covered by a primary insurance payer.

34.     The 2007 amendments, therefore, created an affirmative duty on primary payers, such as Defendants, to notify Medicare and MAOs when they should pay for medical expenses or be primary payers.  Specifically, Responsible Reporting Entities ("RREs"), which include insurers like the Defendants, must determine whether their insureds are Medicare beneficiaries when they enter into settlement agreements with them.  *See* 42 U.S.C. §§ 1395y(b)(7) and (8) (RREs shall "determine whether a claimant…is entitled to benefits under" Medicare); *see also* Section 111 NGHP User Guide, Version 5.0, Chapter 3 at *3-1.[4]

35.     The new reporting requirements affect all parties involved in a payment of a settlement, judgment, or award with a Medicare beneficiary after January 1, 2010. *See Seger v. Tank Connection, LLC*, 2010 U.S. Dist. LEXIS 49013, at *12 (D. Neb. Apr. 22, 2010).  When reporting a case under MMSEA, an RRE must report the Medicare beneficiary's full name,

---

[4] *See* 42 C.F.R. § 411.25.

Medicare Health Insurance Claim Number ("HICN"), gender and date of birth, and complete address and phone number. [5] *See* Section 111 NGHP User Guide, Version 5.0, Chapter 3 at *3.

36.     Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim. Anticipating the burden of the new reporting requirements, CMS developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without authorization. RREs can electronically query whether a particular insured is a Medicare beneficiary and, if so, make sure to notify Medicare when they have entered into a settlement with that insured.

37.     An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to each claimant. 42 U.S.C. § 1395y(b)(8)(E)(i).

38.     However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first. The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions. Reporting does not, itself, provide a safe harbor from making primary payments. It only avoids the imposition of civil penalties. If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer. The obligation of a primary payer to pay first or reimburse CMS or MAOs is only discharged by making the payment.

## PARTIES

39.     MAO-MSO Recovery II, LLC is a Delaware entity, with its principal place of business located at 45 Legion Drive, Cresskill, New Jersey 07626. MAO-MSO Recovery II,

---

[5] An RRE is also required to notify CMS and MAOs when the RRE has made the determination to assume responsibility for ongoing medical services or items for one of their insureds that is also a Medicare beneficiary.

LLC is a citizen of the State of Delaware and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

40.     MSP Recovery, LLC is a Florida entity, with its principal place of business located at 5000 SW 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery, LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

41.     Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPA Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs that should have been paid, in the first instance, by the Defendants.

42.     Plaintiffs have been assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for enrollees under Medicare Part C; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

43.     Defendant Allstate Insurance Company is an Illinois corporation with its principal

place of business located at 2775 Sanders Rd., Northbrook, Illinois 60062.

44.     Defendant Esurance Property and Casualty Insurance Company is a Wisconsin company with its principal place of business located at 4005 Felland Road, Madison, Wisconsin, 53718.  Esurance is an Allstate company.

45.     Complete diversity exists between Plaintiffs and Defendants.

## REPRESENTATIVE FACTS

46.     Numerous Medicare beneficiaries enrolled in Medicare Advantage plans administered by MAOs that have assigned their rights to Plaintiffs herein ("Medicare Beneficiaries"). These Medicare Beneficiaries suffered injuries in the United States where-in Plaintiffs and the putative Class Members paid for medical services, treatment, drugs, and/or supplies.  However, the medical expenses were required to be paid by Defendants.

47.     The Medicare Beneficiaries entered into settlement agreements with Defendants for the injuries that Defendants had primary responsibility to pay.  These settlements demonstrated Defendants' responsibility to reimburse Plaintiffs and the putative Class Members under the Medicare Act.  As such, Defendants, the primary payers, were required to make appropriate reimbursement for the conditional Medicare benefits advanced by Plaintiffs and the putative Class Members on behalf of the Medicare Beneficiaries.  Defendants failed to pay or reimburse the Medicare Beneficiaries' MAOs for the payments made by the MAOs that were required to be paid by Defendants as a result of the Medicare Beneficiaries' injuries.

48.     The MAOs, Full Risk Payers and/or their assignee(s) suffered a monetary injury because of Defendants' failures to pay or otherwise reimburse the MAOs, Full Risk Payers and/or their assignee(s).

## CLASS DEFINITION

49.     The putative class is defined as:

Entities that contracted directly with the Centers for Medicare and Medicaid Services ("CMS") and/or their assignees pursuant to Medicare Part C, including but not limited to MAOs and other similar entities, to provide Medicare benefits through a Medicare Advantage plan to Medicare beneficiaries for medical

services, treatment, drugs, and/or supplies ("Medicare Services"), as required and regulated by HHS and/or CMS, as a direct payer of Medicare Services on behalf of Medicare beneficiaries for parts A, B and/or D, all of which pertain to the same Medicare Services that are the primary obligation of the Defendants; and

That have made payment(s) for Medicare Services, whereby, the MAO or its assignee, as a secondary payer, has the right and responsibility to obtain reimbursement for such Medicare Services. Defendants are the primary payers pursuant to the Medicare Secondary Payer provisions of the Medicare Act;

Where Defendants failed to properly pay the medical bills on behalf of their insureds and have otherwise failed to reimburse (including but not limited to) the MAOs or their assignees, after Defendants entered into settlements with their insureds who received Medicare benefits through enrollment in a Medicare Advantage plan.

This class definition excludes (a) Defendants, their officers, directors, management, employees, subsidiaries, and affiliates; and (b) any judges or justices involved in this action and any members of their immediate families.

## **CAUSE OF ACTION**

50. The claims asserted in this Complaint arise from Medicare Services paid for by the Class Members to treat the injuries suffered by their enrollees as a direct result of an incident covered by Defendants' insurance policies.

51. In addition to having been enrollees with the putative Class Members at the time of an injury-causing incident, Class Members' enrollees were also covered by an insurance policy issued by the Defendants, which covered that incident.

52. Defendants failed to make primary payment and/or appropriately reimburse the Class Members after entering into settlements with their insureds who were also enrolled in a Medicare Advantage plan administered by a Class Member.

53. The Class Members advanced Medicare payments on behalf of their enrollees for medical treatment and supplies for which Defendants were responsible as primary payers. Defendants were primarily responsible by virtue of entering into settlements with their insureds who were also enrolled in a Medicare Advantage plan administered by a Class Member. Class

Members paid for the enrollees' Medicare Services when Defendants had the primary obligation to do so. Accordingly, Plaintiffs seek damages on behalf of themselves and similarly situated MAOs and their assignees for Defendants' violations of the MSP provisions.

## COUNT I
### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

54.    Plaintiffs incorporate by reference paragraphs 1-53 of this Complaint.

55.    Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated MAOs.

56.    The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendants were primary payers for a claim covered by Medicare; (2) the Defendants did not make the primary payment or reimburse the Medicare benefit provider for its payment; and (3) damages.

57.    Defendants entered into settlement agreements with their insureds. Defendants' insureds were also Medicare beneficiaries enrolled in the Class Members' plans, whose Medicare Services were paid for by the Class Members, including entities that assigned their recovery rights to Plaintiffs, *i.e.*, those entities "that provide Medicare benefits to Medicare beneficiaries for medical services, treatment, and/or supplies under Medicare Part C."

58.    Accordingly, in each case Defendants were primary payers for all Medicare Services instead of the Plaintiffs and the Class Members.

59.    Under the MSP provisions, a payer becomes a "primary payer" when responsibility for payment is demonstrated. Responsibility is demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." In this case the Defendants were primarily responsible to make payments for all of the Medicare Services paid for by Plaintiff and the Class Members. This obligation was triggered by Defendants'

settlements with their insureds who were enrolless in a Medicare Advantage Plan administered by a Class Member

60.     A number of Defendants' insureds, who were also Medicare Part C beneficiaries, were involved in incidents which resulted in the necessary and reasonable provision of Medicare Services.

61.     In this case, Defendants failed to administratively appeal the MAOs' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety of reimbursement or the amounts paid.

62.     Pursuant to the underlying insurance policy coverages, Defendants were, as primary payers, obligated to pay for those medical expenses.[6]

63.      Instead, the Class Members and entities that have assigned their recovery rights to Plaintiffs paid for those items and services as part of providing Medicare benefits.

64.     Those payments were conditional payments since the Defendants were, by law, primary payers under the MSP provisions.  Pursuant to the MSP provisions, Defendants are required to reimburse Class Members for those payments when this responsibility is demonstrated through the Defendants' settlements with insureds enrolled in Medicare Advantage plans administered by the Class Members.

65.     Failure to reimburse Plaintiffs and the Class Members for making payments has enabled Defendants to circumvent their responsibilities under the MSP provisions.

66.     Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of MAOs.  Not only did the Defendants avoid having to pay for medical expenses they were otherwise obligated to pay, the Defendants took advantage of the less expensive costs passed on to Medicare patients.

67.     Defendants have profited from their refusal to comply with the MSP provisions.

68.     Pursuant to 42 U.S.C. § 1395y(b)(3)(A), Plaintiffs and the Class Members are

---

[6] This can be demonstrated by Defendants' settlements with insureds enrolled in Medicare Advantage plans administered by the Class Members.

entitled to double damages from Defendants due to their failure to provide primary payment for those claims which the Defendants were primary payers and for which the Defendants have not provided appropriate reimbursement to the Plaintiffs or Class Members.

## CLASS ALLEGATIONS

**I.      National Damages and Injunctive Relief Classes**

69.     This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses, when Defendants should have made those payments as primary payers and should have reimbursed the Class Members.

70.     As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP provisions.  This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members.  Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the harm.  This case, thus, is well suited for class-wide resolution.

71.     Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

72.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

    a.    Numerosity:  There are hundreds of MAOs throughout the United States who were not reimbursed by Defendants after Defendants entered into a settlement

with an insured enrolled in a Medicare Advantage plan administered by an MAO. Thus, the numerosity element for class certification is met.

b.  Commonality:  Questions of law and fact are common to all members of the Class.  Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare Part C.  Defendants failed to make reimbursement payments, report settlements involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MAOs pursuant to the MSP provisions.  Each Class Member shares the same needed remedy, *i.e.*, reimbursement.  Plaintiffs seek to enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare Part C enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c.  Typicality:  Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to make payment and failure to reimburse MAOs.  Plaintiffs' claims are, therefore, typical of the Class.

d.  Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

73.  The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior.  Pursuant to Rule 23(b)(3),

common issues of law and fact predominate over any questions affecting only individual members of the Class ("National Damages Class"). Defendants, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery rights to Plaintiffs, thus depriving both Plaintiffs, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

74. Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

75. Ascertaining and administering the proposed National Damages Class will be relatively simple. The Defendants have entered into settlement agreements with its insureds. Once that data identifying these settlements is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries at the time of those settlements. Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payers and (2) for which reimbursement was not made. Indeed, a Florida state class was recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance*, Case No. 2015-1946 CA-01 (Fla. Cir. Ct. 11 Dist.) using the same methodology.

76. The Class is also properly brought and should be maintained as a class action under Rule 23(b)(2) ("Injunctive Relief Class"). Defendants have acted or refused to act on

grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## II.     National Issues Class

77.     Plaintiffs seek, in the alternative to a National Damages Class and Injunctive Relief Class, a National Issues Class.

78.     Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

79.     In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and the Class Members to resolve, *inter alia*, several important issues:

      a.  Whether Defendants occupy primary payer status as defined by the MSP provisions;

      b.  Whether Defendants' settlements with Medicare beneficiaries qualify them as primary payers for medical expenses arising out of covered incidents;

      c.  Whether Defendants properly complied with their reporting requirements;

      d.  Whether Class Members are entitled to double damages;

      e.  Whether Defendants' failure to timely challenge the reasonableness and/or necessity of payments made by the Class waives the defense; and

      f.  Other threshold legal and factual questions that apply to the entire class.

80.      The Issues Class would be "carved at the joints" after disposition of the preliminary questions of the Defendants' status as primary payers and their duties flowing therefrom.  The individual Class Members would then be able to rely upon the preclusive effect of the determination of Defendants' status as primary payers to then individually litigate specific issues such as damages.

81.     The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality,

typicality, and adequacy because:

    a.  Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of MAOs throughout the United States who were not reimbursed by Defendants after they entered into a settlement with an insured enrolled in a Medicare Advantage plan administered by an MAO. Thus, the numerosity element for class certification is met.

    b.  Commonality: Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all Class Members.

    c.  Typicality: Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to make payment and failure to reimburse MAOs. Plaintiffs' claims are, therefore, typical of the Class.

    d.  Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Their interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

82. The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual Class Members. Proceeding with an issues class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the

expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## JURY TRIAL DEMAND

83.     Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

84.     WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, respectfully request that this Honorable Court:

a.  find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), and certify the respective Classes;

b.  designate Plaintiffs as representatives for the respective Classes and Plaintiffs' undersigned counsel as Class Counsel for the respective Classes; and

c.  issue a judgment against Defendants that:

i.      grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

ii.     grants Plaintiffs and the Classes alleged herein equitable relief by issuing an injunction ordering Defendants to comply with their statutory duties, lest Plaintiffs and the Class Members suffer irreparable future harm;

iv.     grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

v.      grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated: March 28, 2017

Respectfully submitted by,

/s/Christopher L. Coffin
Christopher L. Coffin
David M. Hundley
Courtney L. Stidham (to be moved *pro hac vice*)
PENDLEY, BAUDIN & COFFIN, LLP
1515 Poydras Street, Suite 1400
New Orleans, LA 70112
Phone: (504) 355-0086
ccoffin@pbclawfirm.com
dhundley@pbclawfirm.com
cstidham@pbclawfirm.com

Michael L. Baum (to be moved *pro hac vice*)
R. Brent Wisner (to be moved *pro hac vice*)
Pedram Esfandiary (to be moved *pro hace vice*)
BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel: (310) 207-3233
Fax: (310) 820-7444
mbaum@baumhedlundlaw.com
rbwisner@baumhedlundlaw.com
pesfandiary@baumhedlundlaw.com

***Counsel for Plaintiffs***